**Lee McKINNEY and Lois Irene McKinney, husband and wife, Libelants,**

v.

**The UNITED STATES of America, Respondent,**

and

**Puget Sound Bridge and Dry Dock Company, Respondent-Impleaded.**

No. 17065.

United States District Court
W. D. Washington, N. D.

Dec. 13, 1965.

---

1. Transcript of testimony of February 4, 1963, pp. 139–155.

& Shipping Section, by Henry Haugen, Sp. Atty., Admiralty & Shipping Section, and Michael Hoff, Asst. U. S. Atty., Seattle, Wash., for respondent United States.

Harry Margolis, of Walsh & Margolis, Seattle, Wash., for Lockheed Shipbuilding & Construction Co.

Charles Law, of Greive & Law, Seattle, Wash., for libelants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEEKS, District Judge.

This matter having come on for trial before the above-entitled Court, the Honorable William T. Beeks, presiding, on December 8, 1965; and the Libelants having appeared by and through Charles J. Law of Greive and Law, their proctors; and the respondent, United States of America, having appeared through William N. Goodwin, United States Attorney, John F. Meadows, Attorney in Charge, West Coast Office, Admiralty & Shipping Section, by Henry Haugen, Special Attorney, Admiralty & Shipping Section, Department of Justice, San Francisco, California and Michael Hoff, Assistant United States Attorney, Seattle, Washington; and Respondent-Impleaded, Lockheed Shipbuilding and Construction Company, having appeared by and through Harry Margolis of Walsh and Margolis, its proctors; and the Court sitting in admiralty having heard the testimony of witnesses appearing in behalf of the Libelant and having considered the pleadings on file herein, and being fully advised in the premises, now makes the following

### FINDINGS OF FACT

1. Puget Sound Bridge and Dry Dock Company, now Lockheed Shipbuilding and Construction Company, hereinafter referred to as Lockheed, is and was at all times material hereto a shipbuilding and repair facility located in Seattle, Washington.

2. The USS WACCAMAW (AO-109) is, now and was at all times material hereto a public vessel of the United States

William N. Goodwin, U. S. Atty., John F. Meadows, Atty. in Charge, Admiralty

owned by the United States Navy. The vessel is of a type designated as a fleet oiler.

3. A major modernization, renovation and conversion of the WACCAMAW was performed by Lockheed during the period March 2, 1964, to September 25, 1964.

4. The work was performed pursuant to contracts entered into between Lockheed, as an independent contractor, and the United States Navy on March 8, 1963, consisting of:

a) NObs–4619—a master contract covering the work performed on the WACCAMAW and a sister ship, the USS NAVASOTA (AO–106)

b) General Provisions, Department of the Navy, Bureau of Ships.

c) Specifications for Conversion AO22 Class Oiler to AO (JUMBO).

5. At all times material, Lockheed acted as an independent contractor and not as an agent of the United States.

6. The general nature of the conversion work was to increase the carrying capacity of the WACCAMAW by cutting the hull in two, removing a mid-body section and inserting a new mid-body section which had been separately fabricated. Lockheed performed all such work under the terms of the aforementioned contract at a cost to the United States, for this and a sister vessel, of $14,949,563.00. This contract price is the amount agreed to by the parties at the date of entering into the contract, NObs–4619, on March 8, 1963, and does not include those additional sums paid by the United States Navy for changes in specifications ordered during the progress of the work.

7. The following provisions of contract NObs–4619 are, among others, relevant to the instant litigation:

WHEREAS, the Contractor has represented to the Bureau of Ships that it has an organization, plant and facilities of sufficient capacity without any additional Government-furnished facilities to perform all the work hereunder in accordance with the terms of the contract;

SPECIAL PROVISIONS

ARTICLE 1. *SCOPE*—(a) (i) The Contractor, subject to the Special Provisions and the General Provisions of the contract, shall at its yard at Seattle, Washington modernize, renovate and convert the USS NAVASOTA, AO–106 and the USS WACCAMAW, AO–109 (hereinafter called the "vessels") to Fleet Oilers, AO (JUMBO) and shall deliver the vessels to the Government, complete in all respects, including the installation of materials to be furnished by the Government and the preparation of working plans and other data, all in conformity with the Specifications set forth in Article 2 hereof, including changes therein which may be made as hereinafter provided.

Clause 53. DEPARTMENT OF LABOR SAFETY AND HEALTH REGULATIONS FOR SHIP REPAIRING. Attention of the Contractor is directed to Public Law 85–742, approved August 23, 1958 (72 Stat. 835, 33 U.S.C. 941), amending section 41 to the Longshoremen's and Harbor Workers' Compensation Act and to the Safety and Health Regulations for Ship Repairing promulgated thereunder by the Secretary of Labor (29 C.F.R., Subtitle A, Part 8). These regulations apply to the extent that ship repair and related work, as defined in the regulations, are performed under this contract on the navigable waters of the United States including any drydock or marine railway. Nothing contained in this contract shall be construed as relieving the Contractor from such obligations as it may have for compliance with the aforesaid regulations.

8. The following provisions of the General Provisions, Bureau of Ships, are among others, relevant to the instant litigation:

INSPECTION.—(a) All supplies (which term throughout this clause includes without limitation raw ma-

terials, components, intermediate assemblies, and end products) shall be subject to inspection and test by the Government, to the extent practicable at all times and places including the period of manufacture or construction, and in any event prior to final acceptance of the vessels.

(d) If any inspection or test is made by the Government on the premises of the Contractor or a subcontractor, the Contractor without additional charge shall provide all reasonable facilities and assistance for the safety and convenience of the Government inspectors in the performance of their duties. If Government inspection or test is made at a point other than the premises of the Contractor or a subcontractor, it shall be at the expense of the Government except as otherwise provided in the contract; *provided,* that in case of rejection the Government shall not be liable for any reduction in value of samples used in connection with such inspection or test. All inspections and tests by the Government shall be performed in such a manner as not to unduly delay the work. The Government reserves the right to charge to the Contractor any additional cost of Government inspection and test when supplies are not ready at the time such inspection and test is requested by the Contractor or when reinspection or retest is necessitated by prior rejection. Failure to inspect and accept or reject supplies shall neither relieve the Contractor from responsibility for such supplies as are not in accordance with the contract requirements nor impose liability on the Government therefor.

9. Libelant Lee McKinney was injured on March 25, 1954, while in the course of his employment with Lockheed and while welding in the JP–5 tank in the new mid-body section of the WACCAMAW. The mid-body section was afloat adjacent to the WACCAMAW but had not yet been incorporated into the vessel itself. The mid-body section had no bow, stern or motive power.

10. Libelant Lee McKinney is a resident of Seattle, Washington, and was 35 years of age at the time of his accident.

11. Libelant Lois Irene McKinney is the wife of Lee McKinney.

12. At the time of the accident, libelant Lee McKinney was welding on surfaces in the JP–5 tank coated with "Zinkote." "Zinkote" was approved by the Bureau of Ships of the United States Navy as an acceptable coating compound to be used in the JP–5 tank. The mid-body section was fabricated in Kobe, Japan, by the Kawasaki Dockyard Co., Ltd., as a subcontractor for Lockheed. The "Zinkote" was in turn applied in Japan to the JP–5 tank by Inouye & Company, Ltd., as a subcontractor for the Kawasaki Dockyard Co., Ltd.

13. "Zinkote," which contains a high percentage of metallic zinc, is an inorganic zinc silicate which serves as a protective coating on metal surfaces against rust and corrosion, serving substantially the same purpose as galvanizing. "Zinkote" is in common usage in marine work.

14. Welding on a "Zinkote" coated surface will release fumes containing zinc which fumes are toxic in nature. The same precautions should be taken when welding on surfaces coated with "Zinkote" as when welding on galvanized or zinc surfaces. All welding creates a certain amount of fumes to a greater or less degree which fumes a welder attempts to avoid breathing. Lockheed and the United States had knowledge of the nature of "Zinkote" as described above.

15. Welding on surfaces coated with "Zinkote" at the time and place here involved is reasonably safe if adequate ventilation and respirators are provided and used. There is a health danger from fumes generated by welding on surfaces coated with "Zinkote" if such precautions are not taken, and all parties to this action had knowledge of this. Libelant Lee McKinney had been a welder for five years and always tried to avoid breathing welding fumes and smoke.

16. At the time of the accident, libelant Lee McKinney was employed by Lockheed and was solely and exclusively subject to the supervision of Lockheed supervisory personnel in the performance of his duties. No Naval personnel issued any orders or directions directly to the libelant relating to the manner of the performance of his work nor to the safety precautions which should be observed. At no time were Navy personnel aboard the new mid-body section, except for Navy inspectors who checked to see that the work was being done pursuant to the contract specifications.

17. Libelant Lee McKinney was directed to perform his welding operations in the JP–5 tank by supervisory personnel employed by Lockheed; obtained a face mask respirator from a Lockheed tool room; and was provided a four-inch "sucker" for the mechanical exhausting of welding fumes by Lockheed.

18. Libelant Lee McKinney noted that the coating on which he was welding was blue-gray in color, created an odor like galvanized metal, and that his welding generated a blue smoke which was heavier in concentration than he normally encountered when welding on common paints. He felt sick to his stomach about 10:30 or 11:00 p. m. on March 26, 1964, after he had been welding in the JP–5 tank for approximately five hours.

## CONCLUSION OF LAW

1. Jurisdiction is vested in this Court by virtue of the Public Vessels Act, Title 46, United States Code, Section 781, et seq.

2. The United States owed no warranty of seaworthiness to the libelants under the circumstances herein.

3. The United States owed no duty to provide, or ensure that Lockheed provided, ventilation equipment to Libelant Lee McKinney under the circumstances herein and therefore was not negligent in failing to take such precaution.

4. That respondent United States was not negligent in authorizing or permitting the use of "Zinkote" in the confined spaces of the JP–5 tank.

5. The libelants have shown no right to relief upon the facts and the law.

6. Respondent, United States of America, is entitled to a decree dismissing the action of Lee McKinney and Lois Irene McKinney on the merits and without costs.